**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------×
MARY BISHOP,

                    *Plaintiff,*

                    *v.*

SERVICES FOR THE UNDESERVED, INC., and
PALLADIA, INC.

                    *Defendants.*
---------------------------------------------------------------------------×

**19-CV-7490**

**COMPLAINT**

Plaintiff Mary Bishop, by her counsel, Young & Ma LLP, alleges for her Complaint against Defendants Services for the Underserved, Inc. and Palladia, Inc. as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Mary Bishop ("Plaintiff" or "Bishop") seeks damages and costs against Defendants Services for the Underserved, Inc. and Palladia, Inc. (collectively, "Defendants") for discriminating against her based on her disability, failure to accommodate and among other things, subjecting her to a hostile work environment, retaliation and ultimately terminating her from her employment, in violation of Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12101 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2. Plaintiff also seeks damages and costs against Defendants for retaliation under New York Labor Law § 215 for adverse employment actions and termination after appropriate reporting of the violations under New York Labor Law and commencing an action in the Supreme Court of the State of New York, New York County on the basis of the violations.

**JURISDICTION AND VENUE**

3. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under the ADA.

4. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about February 2018.

5. The EEOC issued a Right to Sue Letter on May 8, 2019, which was received by Plaintiff's counsel on May 18, 2019.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL and NYLL claims as they are so related to the ADA claims that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

**PARTIES**

8. Plaintiff, at all times relevant hereto, was and is a resident of Bronx County in the State of New York.

9. Upon information and belief, at all times relevant hereto, Defendant Services for the Underserved, Inc. was and is a domestic not for profit corporation organized under the laws of the State of New York, doing business in New York City with offices located at 463 Seventh Avenue, 17th Floor, New York, NY 10018.

10. Upon information and belief, at all times relevant hereto, Defendant Palladia Inc. was and is a domestic not for profit corporation organized under the laws of the State of New

York, doing business in New York City with offices located at 463 Seventh Avenue, 17th Floor, New York, NY 10018.

<strong><u>STATEMENT OF FACTS</u></strong>

**<u>Background and Performance</u>**

11. Plaintiff Bishop, an African American woman over the age of 40, is an extremely competent healthcare worker and non-profit employee who is a Certified Credentialed Alcoholism and Substance Abuse Counselor ("CASAC") suffering from circadian rhythm sleep disorder.

12. Services for the Underserved, Inc. ("S:US") is a non-profit human services agency that offers support to individuals and families faced with a wide range of challenges, ranging from mental illness, to intellectual/developmental disabilities, to HIV/AIDS, which challenges are often compounded by histories of homelessness, substance abuse, poverty and unemployment. S:US provides housing, day services, employment services, and other support services to thousands of individuals throughout New York City.

13. Plaintiff worked for Palladia, Inc. ("Palladia") prior to December 2014 when it was merged into S:US. Palladia has 29 programs in 25 different locations (primarily Harlem and the Bronx).

14. Prior to joining Palladia and S:US, Plaintiff worked as a home health aide for First Choice Home Care. She also has experience working for NYC Department of Citywide Administrative Service.

15. In July 2005, Plaintiff joined Palladia as a Receptionist/House Monitor at the Cedar Tremont House location, which is a low-income safe housing facility. Upon information

and belief, S:US has receptionists/house monitor employees across over 25 locations and the job is easily transferrable.

16.     In her capacity as Receptionist/Housing Monitor, Plaintiff provided access to enter the building, monitored security cameras, greeted and directed visitors, enforced safety procedures, monitored the facility to prevent theft/fire/accidents, and called 911 and instructed tenants in emergencies.  Plaintiff had general administrative and clerical duties.

17.     Throughout Plaintiff's time at Palladia and S:US, she has received exceptional performance reviews.  She received Certificates of Achievement upon reaching her fifth and tenth work anniversaries.

18.     Whilst employed at the Company, from July 2012 to May 2014, Plaintiff became certified in Relias courses such as Confidentiality of  Substance Use Treatment Information; NY State Mandated Reporter Training; Tobacco/Smoking Cessation and Behavioral Health; Law, Ethics, and the Standards of Care in Behavioral Health; Navigating the Ethics of Dual Relationships; Cultural Diversity; Trauma-Informed Clinical Best Practices; Motivational Training; and Therapeutic Boundaries.

19.     On September 21, 2012, Plaintiff's supervisor at Palladia, Ms. Marni Low, wrote a letter to recommend her to the CASAC Training Program at Outreach Project. In the letter, Ms. Low wrote: "I have worked with Mary since June 2011 as the Director of Social Services and Program Director of Cedar Tremont House. During this time, Mary has proven to be a loyal employee and has proven the ability to establish and develop rapport with the tenant's [sic] who reside at Cedar Tremont House...I recommend Mary Bishop to Outreach Project's CASAC Training Program and believe she will be an asset to the field of substance use and the social service industry as a whole."

20.  In addition, Plaintiff became certified in "Peers Providing Trauma-Informed Care" by the New York State Department of Health on February 8, 2016.

21.  At the Center for Urban Community Services, Plaintiff was certified in Trauma Informed Care 2: Supporting Persons with Trauma Histories (December 8, 2017), and Using the Stages of Change to Help Persons with Smoking Cessation (December 27, 2017).

22.  From 2014, Plaintiff was supervised by Ms. Marni Low.  From approximately 2015 to December 2017, Plaintiff's supervisor was Ms. LaShanta Thomas.  Beginning in 2018, Plaintiff reported to Ms. Audrey George-Owens.

**Disability Discrimination/Failure to Accommodate/Retaliation**

23.  Since 2014, Plaintiff became officially diagnosed with Circadian Rhythm Sleep Disorder.

24.  On July 7, 2014, Plaintiff submitted a note from her doctor Arvindbhali I. Patel, MD to her supervisor, Ms. Marni Low, which stated: "Mary Bishop (D.O.B. --66) is currently a patient in my practice. She feels very weak, and tired and is unable to perform her daily tasks after her shift work from 1:00 A.M. to 9:00 A.M.  She suffers from Circadian Rhythm Sleep Disorder (shift work  sleep disorder). She is recommended a shift from 5:00 P.M. to 1:00 A.M."

25.  Although Plaintiff was certain she could no longer perform the overnight shift, she was still adjusting to and learning about her new condition and thought that a steady evening shift (rather than overnight) would at least improve her conditions.

26.  In response to Dr. Patel's letter, Ms. Low allowed Plaintiff to work from 5:00 P.M.  to 1:00 P.M, the evening shift.

27. Since 2014, Plaintiff's condition unfortunately worsened, and working the evening shift still made her sick and fatigued.

28. In 2016, Plaintiff began to notice that she was not paid for lunch hours worked under New York Labor Law. In May 2017, she commenced a lawsuit for these unpaid lunch hours in the Supreme Court of New York, New York County.

29. Because Defendants knew of Plaintiff's condition, and because she decided to join a co-worker to complain about unpaid wages, Defendants retaliated against her in taking her weekends away from her.

30. Her coworker Tanika Thomas and new supervisor Ms. LaShanta Thomas started to treat her unfairly, not communicating with Plaintiff about tenants, distancing from Plaintiff, isolating Plaintiff, and not paying bonuses that were always paid in previous years and continued to be paid to everyone else.

31. Plaintiff's schedule was also switched to three different shifts and she had split days off on the weekends, which greatly worsened her circadian rhythm conditions. It is well known that patients with this condition cannot do different shift work and need regularity. Plaintiff also suffered from loss of appetite, weight loss, loss of focus and concentration, depression, headaches and other pains.

32. Although Plaintiff had greater credentials than Tanika Thomas and a CASAC-T degree, and although she should have been given an opportunity for promotion to counselor, she was not given any opportunities to advance in her career and instead was retaliated against for taking action for unpaid wages and requesting reasonable accommodations/having a disability.

33. Plaintiff tried her best to suffer through her conditions but in September 2017, her conditions really worsened and she was physically unable to continue the evening shift.

34. On September 11, 2017, Plaintiff submitted another note from Dr. Patel to her then-supervisor Ms. LaShanta Thomas (who was much more negative to Plaintiff), which stated: "Mary Bishop (D.O.B. --66) is currently a patient in my practice. She feels very tired and weak, and is unable to perform her daily tasks after her shift work from 8:00 P.M. to 12:00 P.M. She suffers from Circadian Rhythm Sleep Disorder (shift work sleep disorder). She has been recommended a shift from 8:00 A.M. to 4:00 P.M. or 9:00 A.M. to 5:00 P.M."

35. Ms. LaShanta Thomas ignored this note, and Plaintiff later found it in the trash.

36. The morning shift was available to Plaintiff, because she was the only house monitor employed full time at her location. The house monitors who worked the other shifts were temporary employees. Defendants also had many other locations for Plaintiff's skills and expertise. They certainly could have accommodated this request, and it would not have provided undue business burden and it would not have been financially costly.

37. Plaintiff was responsible for training temporary house monitors. Therefore she obviously had the know-how, was the most senior house monitor, and could easily fill any shift, including the day shift that she medically needed.

38. Her co-worker Tanika Thomas, who had started working around 2005 like Plaintiff, was lesser qualified and yet had already been promoted to an administrative assistant with the 8 am to 4 pm shift. Meanwhile, Plaintiff had more education and training but could not be accommodated even after proper submission of doctor's notes. Because

Plaintiff had filed a wage lawsuit and asked for reasonable accommodation, she was not preferred.

39. In November 2017, when Plaintiff repeated her request to work the morning shift to Ms. LaShanta Thomas, she was brought in to meet with a representative from Human Resources, Ms. Caroline George. Ms. George dismissed Plaintiff's request and refused to read the note from Dr. Patel.

40. The only accommodation Plaintiff needed was a change in hours from the evening shift to the morning shift, and there was no legitimate business reason for preventing it or any difficulty to switch the shifts.

41. On February 15, 2018, Plaintiff wrote to her next supervisor Ms. Audrey George-Owens that she did not receive her bonus like her co-workers. On February 16, Ms. George-Owens acknowledged she did not get the raise and that she would be resolving it promptly. On February 28, Plaintiff still did not get her raise or bonus. Plaintiff had not received it even by April 2. It was clear Plaintiff was being retaliated against for having too many human resources related "issues" such as speaking up about owed wages and asking for reasonable accommodation.

42. On March 2, 2018, Plaintiff wrote to her supervisor Ms. George-Owens: "I physically can't continue to work the 4 pm – 12 am shift, (Doctors order have documentation) I need a 8 am- 4pm shift. I've had this medical condition since 2014 and since then has worsen, have been pushing myself ever since. I've made many request on this matter in the past."

43. Although Ms. George-Owens was her supervisor and clearly in a management position, and had an obligation to report this communication to HR/Legal and

start an interactive process, she instead responded that Plaintiff needs to "step back into the chain of command" and discuss the issue with Program Director Ms. Yolanda Stevenson.

44. On March 27, 2018, Ms. Yolanda Stevenson emailed that she was attempting to set up a meeting with HR due to Plaintiff's "scheduling" concerns and did not recognize her request as a reasonable accommodation request.

45. On April 5, 2018, Plaintiff emailed that she wanted her employment attorney at the time, Michael Samuel, to attend the meeting with her. Suddenly at this point a HR Business Partner got involved and denied the request to have an attorney present, and *for the first time* alleged that Plaintiff was offered the requested shift, and that she declined it. This was completely untrue, as Plaintiff was always offered split shifts and never offered a full five-weekday 8 am to 4 pm shift with weekends off. It is highly suspect that Defendants alleged they were willing to accommodate Plaintiff by making an offer that one singular time verbally (and with no other evidence) when there are written medical and legal requests for reasonable accommodation for the day shift from November 2017 all the way to the time of Plaintiff's termination in February 2019, all of which were ignored.

46. On May 21, 2018, Plaintiff emailed Ms. Yolanda Stevenson again explaining why the accommodation since 2014 was not working. She explained again that she has circadian rhythm (sleep disorder) and yet has 3 different shifts in a week with split days off every other week, and that she wakes up at 6 am when the sun comes up and is up all day until 2 am after her 4 pm to 12 am shift, getting only 4 hours of sleep. Plaintiff explained that because she trained 28 guards that have morning shifts, she was qualified for the morning shift and there appeared to be plenty of space and accommodation for new guards

and other employees to work the morning shift. Plaintiff again asked for reasonable accommodation for the 8 am to 4 pm shift.

47. It is well known that shift work or changes in routine exacerbate circadian rhythm disorders. In Plaintiff's particular case, she cannot sleep when the sun is up and therefore it is best for her health to work the morning shift so she can continue her natural sleep cycle at night.

48. Due to Plaintiff's inability to be accommodated and other health issues, Plaintiff took leave starting in October 31, 2018.

49. On January 16, 2019, Plaintiff submitted a doctor's note again asking for reasonable accommodation indicating she could return to work on light duty with "light travel, morning shifts only, continue work 3X week, Return to work 2/19/19."

50. Within 6 days of the doctor's note, with no cooperative dialogue or interactive process, Ms. Vanessa Guevara wrote back, "Thank you for the doctor's note, we cannot accommodate you back with the morning shift restrictions. You will have to have a letter that does not restrict you to doing only morning shifts or you can work with a recruiter and they will be able to assist finding you a role that is best suited to your restrictions." At this point, Plaintiff had been out of work for ***less than*** 3 months.

51. Since October 15, 2018, the New York City Human Rights Law has been modified to require a "cooperative" dialogue with the employee in a timely matter concerning reasonable accommodation requests. Also, Defendants had to submit a written determination whether this request would be granted or denied, and supporting reasons. There was absolutely no cooperative dialogue as the request was rejected in 6 days and there was absolutely no

credible explanation as to why Plaintiff's medical request to return to work with morning shifts was being denied.

52. On January 30 2019, Leon Gordon, the Talent Acquisition Specialist for S:US, wrote, "Unfortunately, I do not have any open Desk Security positions available at this time." Defendants' obligation under the ADA and NYCHRL require that they do more than look into "open" positions, such as to continue looking for a longer period of time, look more thoroughly, and make additional efforts to accommodate Plaintiff. Given the number of shifts that are frequently filled in the morning hours across all of Defendants' locations utilizing employees with Plaintiff's qualifications, it is unbelievable that Plaintiff could not have been offered a morning shift in any of those positions.

53. On February 21, 2019, S:US wrote to Plaintiff a letter, "As you are aware, you have exhausted your 12 weeks of leave under the Family and Medical Leave Act (FMLA). As you continue care, your worker's compensation claim will remain active with church mutual. Effective February 11, 2019 your employment with S:US terminated." Defendants did not analyze whether Plaintiff was entitled to more time off under New York State or City Human Rights Law as an accommodation while they looked for a shift that could work medically for her.

54. At the time of termination, there were several locations with morning shifts that could have used an employee of Plaintiff's training, experience and background. These include but are not limited to the locations at Cedar Tremont, Star Hill, Hill House, ATI, Boston Road/Breaking Ground, Caldwell Avenue, Create 1015, CIT Bronx, Fox Point, Macombs, Marcy/Sheridan, Scattered Site Bronx, Stratford House, and Third Avenue.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Disability Discrimination in Violation of the Americans with Disabilities Act**
**(Against All Defendants)**

55. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

56. At all relevant times, Plaintiff was an "employee" under the ADA, 42 U.S.C. § 12111(4).

57. Upon information and belief, Defendants are an "employer" under the ADA, 42 U.S.C. § 12111(5).

58. The ADA prohibits discrimination by employers against a qualified individual with a disability, and prohibits discrimination in the following areas: recruitment, pay, hiring, firing, promotion, job assignments, training, leave, benefits, layoff, and all other employment related activities. 42 U.S.C. § 12112 (a).

59. Plaintiff has circadian rhythm sleep disorder that she made known to her employer.

60. Plaintiff's disability was used by the Company wrongfully and without basis to deny Plaintiff the pay, privileges, and other benefits to which she was rightfully entitled by limiting, segregating, or classifying Plaintiff in a way that adversely affects the opportunities or status of Plaintiff because of her disability. Ultimately, Plaintiff was terminated due to her disability.

61. In fact, Defendants utilized Plaintiff's disability to torture her and make her uncomfortable and in ways risky to her health and safety until she had to take leave and then Defendants refused to allow her to return, and terminated her.

62. By reason of the foregoing, Plaintiff suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Disability Discrimination in Violation of New York City Human Rights Law**
**(Against All Defendants)**

63. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

64. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

65. At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

66. At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

67. At all times relevant to this case, Plaintiff was and is a member of protected classes within the meaning of NYCHRL.

68. At all times, Defendants were aware of Plaintiff's disability.

69. Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's disability in the manner described in the Statement of Facts.

70. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

71. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

72. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

73. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost bonuses; and (vi) attorney's fees and costs.

74. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer, among other items, impairment and damage to Plaintiffs' good name and reputation, emotional distress, mental anguish, emotional pain and suffering, and lasting embarrassment and humiliation.

75. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

### THIRD CAUSE OF ACTION
**Disability Discrimination in Violation of New York State Human Rights Law**
**(Against All Defendants)**

76. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

77. This claim is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

78. At all relevant times, Defendants were and are employers within the meaning of the NYSHRL.

79. At all relevant times, Plaintiff was and is an employee within the meaning of the NYSHRL.

80. At all times relevant to this case, Plaintiff was and is a member of protected classes within the meaning of NYSHRL.

81. At all times, Defendants were aware of Plaintiff's disability.

82. Defendants engaged in unlawful employment practices prohibited by NYSHRL because of Plaintiff's disability in the manner described in the Statement of Facts.

83. Ultimately, Plaintiff was terminated by Defendants due to her disability.

84. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of disability as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

85. Defendants are also individually and jointly liable for the unlawful conduct herein, including without limitation as an ''employer'' under the NYSHRL and under the ''aiding and abetting'' provision of the NYSHRL. See, e.g., NYSHRL § 296(1) and § 296(6).

86. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

87. Plaintiff's damages include financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

88.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

**FOURTH CAUSE OF ACTION**
**Failure to Provide a Reasonable Accommodation in Violation of**
**the ADA, NYSHRL and NYCHRL**
**(Against All Defendants)**

89.     Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

90.     The ADA, NYSHRL and NYCHRL require Defendants to engage in a mandatory interactive process and cooperative dialogue to identify a reasonable accommodation for an employee with a disability.

91.     Defendants failed to provide a reasonable accommodation for Plaintiff's disability by refusing to engage in the mandatory interactive process and cooperative dialogue in good faith to identify a reasonable accommodation for her disability.

92.     As such, Defendants have violated the ADA, NYSHRL and NYCHRL.

93.     Additionally, Defendants failed to engage in a cooperative dialogue pursuant to the October 15, 2018 changes to NYCHRL after obtaining multiple verbal, written and medical notices of Plaintiff's medical need to transfer to the day shift, and failed to provide a credible written explanation as to why the transfer/accommodation was not possible for a company the size of Defendants and with the number of locations with morning shifts for someone with Plaintiff's skills and qualifications.

94.     As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress, all in amounts to be determined at trial.

95. Defendants' discriminatory conduct was willful and in reckless disregard of Plaintiff's protected rights. As such, Plaintiff is entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**Retaliation under New York Labor Law § 215**
**(Against All Defendants)**

96. Plaintiff hereby alleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

97. Plaintiff was an "employee" as defined under N.Y. Lab. Law § 190(2).

98. Defendants were "employers" as defined under N.Y. Lab. Law § 190(3).

99. During the course of her employment with and separation from Defendants, Defendants failed to pay compensation, lunch hours, and break hours in violation of New York Labor Law.

100. Plaintiff reported these failures to pay adequately as alleged in the Statement of Facts and filed a lawsuit on this basis.

101. Plaintiff pursued her rights to compensation and unpaid break hours, which is protected activity under the New York Labor Law. Her May 2017 lawsuit was filed with violation of New York Labor Law as a cause of action.

102. Following Plaintiff's lawsuit, she suffered adverse employment actions and her employment was ultimately terminated by Defendants.

103. Such retaliation is likely to deter reasonable employees from complaining about wage issues at Defendants' place of employment or to take any action concerning owed compensation, unpaid break hours, wages or salary.

104. As a result of the foregoing, Plaintiff has been denied employment, lost wages and benefits, and has incurred damages.

105. As a result of the foregoing, Plaintiff is entitled to appropriate relief, including enjoining the conduct of Defendants, and ordering payment of lost compensation and damages, liquidated damages, costs and reasonable attorney's fees to Plaintiff by Defendants.

## JURY DEMAND

106. Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12101 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. and New York Labor Law § 215.

B. Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C. Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits in the amount of the wages it is determined that the Plaintiff lost as a result of the Defendants' unlawful and discriminatory conduct, together with interest;

D. Enter judgment in favor of the Plaintiff, and against the Defendants, for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, and pain and suffering, together with interest;

E. Award the Plaintiff punitive damages;

F. Award the Plaintiff liquidated damages;

G.     Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.     Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.     Such other and further relief as the court deems appropriate to be determined at trial.


Dated:     New York, New York
           August 11, 2019


By: _____
           Tiffany Ma, Esq.
           Young & Ma LLP
           575 Lexington Avenue, 4th Floor
           New York, NY 10022
           T: (212) 971-9773
           F: (212) 600-2301
           tma@youngandma.com

           *Counsel for Plaintiff Mary Bishop*